■ PAN AMERICAN WORLD AIRWAYS, INC., Plaintiff, v OVERSEAS RALEIGH MANUFACTURING, LTD., et al., Defendants. PAN AMERICAN WORLD AIRWAYS, INC., Respondent-Appellant, v OVERSEAS RALEIGH MANUFACTURING, LTD., Appellant-Respondent.—Order of the Supreme Court, New York County, entered April 20, 1979 denying plaintiff's motion to dismiss defendant's three counterclaims modified, on the law, without costs, to the extent of dismissing the first counterclaim and reducing the second and third counterclaims by the sum of $248,839.03 and otherwise affirmed. Order of the Supreme Court, New York County, entered February 14, 1979 granting summary judgment to plaintiff in the sum of $248,839.03, with interest thereon from February 2, 1977 and holding the entry of judgment in abeyance pending the determination of defendant's counterclaims modified, on the law, without costs, to stay only so much thereof as the amount sued for in defendant's second and third counterclaims exceeds the amount of plaintiff's judgment, and otherwise affirmed. Plaintiff (Pan Am), an overseas airfreight carrier, sues to recover for charges incurred in the shipment of clothing by defendant Raleigh from Roumania to New York. The total charges, according to plaintiff's posted tariffs, was $802,349.84. Payments aggregating $553,510.81 were made on account, leaving due a balance of $248,839.03. Pan Am instituted this suit to recover that balance. Raleigh contends that prior to the entry into the agreement of carriage with Pan Am it shipped the clothing manufactured for it from Roumania to New York via KLM. It asserts that during its negotiations with Pan Am, Raleigh made clear that it would be willing to transfer its shipping business from KLM to Pan Am only if Pan Am could better the KLM price. Ultimately, claims Raleigh, a unit price agreement was entered into under which Pan Am was to charge $1.25 per unit for suits and $1.00 per unit for blazers. It is undisputed that Pan Am's filed tariff provides only for shipment by weight. To bring the unit charge within the required tariff Pan Am and Raleigh arrived at the weight of an average container. By apportioning the weight of that container among suits and blazers in a fixed ratio, Pan Am was able to arrive at a unit cost consistent with its filed weight tariffs. However, the reckoning of the average container weight proved faulty because Raleigh shipped a disproportionate number of the substantially heavier suits. Hence, the airway bills which were based on weight only, in accordance with Pan Am's tariffs, were considerably higher than they would have been had they been based upon the unit price. Raleigh was billed for

the balance of $248,839.03. When it refused to pay, Pan Am instituted this suit. In addition to denials and affirmative defenses, Raleigh interposed three counterclaims. The first is bottomed on alleged fraud and demands damages of $248,839.03, the precise amount sued for by Pan Am. The second counterclaim avers that Pan Am agreed to transport all shipments simultaneously delivered to it in the same aircraft, that it hang all such goods in special containers and that it failed to do so with resultant damage to Raleigh in the sum of $350,000. The third and final counterclaim is a reiteration of the second with a change of theory from that of breach of contract to negligence. Following completion of discovery Pan Am moved for summary judgment. That motion was granted. However, Special Term stayed the entry of judgment pending disposition of the counterclaims. Raleigh appeals from so much of the order as granted summary judgment while Pan Am cross-appeals from so much of the order as stayed the entry of judgment pending disposition of the counterclaims. Thereafter Pan Am moved to dismiss the counterclaims. That motion was denied by Special Term and Pan Am has appealed therefrom. Under the Federal Aviation Act (US Code, tit 49, § 1301 *et seq.)* all air carriers, foreign and domestic, are required to file tariffs with the Civil Aeronautics Board (US Code, tit 49, § 1373, subd [a]) and no shipper "shall knowingly pay, directly or indirectly * * * any greater or less or different compensation for air transportation of property, or for any service in connection therewith, than the rates, fares, and charges specified in currently effective tariffs applicable to such air transportation" (US Code, tit 49, § 1373, subd [b], par [2]). A tariff filed in compliance with the law constitutes the contract of carriage between the parties *(Vogelsang v Delta Air Lines,* 302 F2d 709, cert den 371 US 826). It is "the sole standard for services to be rendered and charges assessed and collected". *(United States v Associated Air Transp.,* 275 F2d 827, 832.) It follows therefrom that regardless of any contract alleged to have been made between the parties plaintiff was required to collect and defendant to pay the charges specified in the appropriate filed tariffs. Accordingly, the motion for summary judgment was properly granted. With respect to the counterclaims it is apparent that Raleigh is endeavoring to do indirectly that which it is barred by law from doing directly. The first counterclaim seeks recoupment of the exact amount sued for based upon the assertion of fraud and deceit. From the bill of particulars it is plain that the sum for which Pan Am recovered judgment is part of the second and third counterclaims as the "Difference between the amount claimed by plaintiff and cost otherwise available to Raleigh". Since this item of $248,839.03 may not be used as a setoff it is not available as a counterclaim. Thus, the first counterclaim must be stricken as must so much of the second and third counterclaims as include this sum as an item of damage. In light of the striking of the first counterclaim and so much of the second and third counterclaims as seeks recovery of the sum of $248,839.03, the stay contained in the order entered February 14, 1979 must be modified accordingly. Concur—Sullivan, J. P., Bloom, Markewich, Silverman and Ross, JJ.